902 A.2d 215

NEW JERSEY DIVISION OF YOUTH & FAMILY SERVICES, PLAINTIFF–RESPONDENT, v. S.S., DEFENDANT, IN THE MATTER OF THE GUARDIANSHIP OF A.M.S., MINOR CHILD, APPELLANT.

Argued March 7, 2006—Decided July 18, 2006.

*Edward B. Marable, Jr.*, Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney; *Noel C. Devlin*, Assistant Deputy Public Defender, on the briefs).

*Andrea M. Silkowitz*, Assistant Attorney General, argued the cause for respondent (*Zulima V. Farber*, Attorney General of New Jersey, attorney; *Michael J. Haas* and *Patrick DeAlmeida*, Assistant Attorneys General, of counsel; *Jennifer A. Lochel*, *Nora P. Pearce*, *James D. Harris* and *Angela N. Domen*, Deputy Attorneys General, on the briefs).

*James Katz,* Designated Counsel, argued the cause for *amicus curiae,* New Jersey Child Advocate (*Adrienne M. Bonds,* Acting Child Advocate, attorney; *Kevin M. Ryan* and *John A. Ducoff,* of counsel and on the brief).

Justice ALBIN delivered the opinion of the Court.

■ Too many children are born into homes where they are neglected or abused by unfit parents. When parents expose their children to persistent peril, the State removes the children from their homes to safeguard their welfare. In the process, the natural order of familial relationships is often irrevocably altered. In many cases, brothers and sisters are separated from one another and placed in different foster homes. As they are integrated into new families, the question arises whether the separated siblings have a right to a continuing relationship with one another.

In this case, the Family Court terminated S.S.'s parental rights to her biological daughter, A.M.S. The Appellate Division affirmed, and S.S. does not challenge the termination of her rights. At the time of A.M.S.'s birth, her four older siblings had been removed from S.S.'s home. As A.M.S. approaches her fourth birthday, she lives happily with the only family she has known her entire life, a foster family that loves and wishes to adopt her. Her four older siblings, now ages six, nine, thirteen, and sixteen, live with another family that has already adopted them. Through the cooperation and caring of those two families, A.M.S. has been able to visit and maintain a continuing relationship with her siblings.

A.M.S.'s law guardian petitioned for certification, challenging the permanency plan for A.M.S.'s future adoption and asserting the right of A.M.S. to sibling visitation in a post-adoption setting. We granted certification "limited solely to the issue of whether the Division of Youth and Family Services or the courts have an affirmative duty to ensure that contact between siblings is maintained, even in a post-adoption context, when the siblings are in separate homes.". 185 *N.J.* 296, 884 *A.*2d 1266 (2005). We also

granted the motion filed by the New Jersey Child Advocate to participate as amicus curiae.

Because a sibling relationship is not in jeopardy in this case, we have no genuine controversy and therefore we now vacate certification as improvidently granted. We commend to the Legislature's attention the important issues raised here concerning the scope of sibling rights in the context of the Child Placement Bill of Rights Act, *N.J.S.A.* 9:6B–1 to –6, the Grandparent and Sibling Visitation Statute, *N.J.S.A.* 9:2–7.1, and the Adoption Act, *N.J.S.A.* 9:3–37 to –56.

## I.

The law guardian essentially argues that the right of A.M.S. to visitation with her adopted siblings should not be dependent on the discretion of their respective families. As of the present date, those families have voluntarily cooperated to bring A.M.S. together with her three brothers and sister. Using this case as a vehicle, the law guardian seeks to have this Court establish an independent right to sibling visitation in appropriate circumstances, even against the will of the adoptive parents. The law guardian underscores "the importance of sibling relationships to children who are placed in the foster care system" and the reality that following a parental-rights-termination trial, the only remaining and lasting ties may be the biological bonds between brothers and sisters. Thus, the law guardian submits that when maintaining sibling relationships is at issue in a guardianship hearing, the trial court must consider whether "continuing sibling contact is in the child's best interests."

Amicus curiae New Jersey Child Advocate supports the law guardian's position, but adds that siblings, even when adopted by separate families, possess a right of visitation—a right to associate with one another guaranteed by Article I, Paragraph 1 of the New Jersey Constitution. The Child Advocate asserts that "clinical research literature demonstrates that the sibling relationship is of tremendous importance to children, who have been removed from

their homes due to abuse or neglect." The Child Advocate, however, notes that recognizing a fundamental sibling right to association "could lead to conflicts between a child to be adopted, the child's sibling, and the putative adoptive parents that a court would have to address and resolve at the time of adoption." One example of a conflict that could arise, according to the Child Advocate, is "when both siblings wish to maintain the sibling relationship and the potential adoptive parents do not agree to the maintenance of that relationship." In such circumstances, the Child Advocate suggests that the court must "afford substantial deference to the . . . child's constitutional right to maintain sibling visitation."

DYFS, on the other hand, contends that there is no constitutional right to post-adoption sibling visitation. According to DYFS, "existing constitutional law is clear that the fundamental right to parent autonomy and privacy cannot be eclipsed by the creation of a competing right for sibling contact." Moreover, DYFS reasons that "enforceable post-adoption sibling visitation is not consistent with" this State's adoption laws or the Grandparent and Sibling Visitation Statute as construed in *In re Adoption of a Child by W.P. & M.P.*, 163 *N.J.* 158, 748 *A.*2d 515 (2000). DYFS urges that this Court not authorize judges to impose sibling visitation on adoptive families, fearing that such a judicial remedy "would adversely effect [DYFS's] ability to recruit and maintain adoptive parents." DYFS stresses that "once adoption is granted, the integrity of the new family" unit is paramount and must be protected from interference by relatives from the prior family unit.

## A.

The importance of sibling relationships is well recognized by our courts and social science scholars. In *L. v. G.*, the court stated that "[a] sibling relationship can be an independent emotionally supportive factor for children in ways quite distinctive from other relationships, and there are benefits and experiences that a child

reaps from a relationship with his or her brother(s) or sister(s) which truly cannot be derived from any other." 203 *N.J.Super.* 385, 395, 497 *A.*2d 215 (Ch.Div.1985). According to that court, "[t]he bonds which develop between brothers and sisters are strong ones, and are, in most cases, irreplaceable." *Id.* at 398, 497 *A.*2d 215. Some mental health experts believe that the sibling relationship can be "longer lasting and more influential than any other, including those with parents, spouse, or children[,]" and that "[w]hen it is severed, the fallout can last a lifetime." Nat'l Adoption Info. Clearinghouse, *The Sibling Bond: Its Importance in Foster Care and Adoptive Placement* 1 (1992), http://www.child-welfare.gov/pubs/f—siblin.pdf; *see also* Ellen Marrus, *"Where Have You Been, Fran?" The Right of Siblings to Seek Court Access to Override Parental Denial of Visitation,* 66 *Tenn. L.Rev.* 977, 987 (1999) ("[O]ver the course of an entire lifespan, siblings have significant influence on each other's lives. If nurtured and maintained, these relationships can provide emotional security, affect the intellectual, social, emotional, and moral development of one another, and offer lifetime companionship."). Some commentators have noted that maintaining sibling relationships can provide a sense of stability in the lives of abused children placed outside of their natural homes. *See, e.g.,* Mary Anne Herrick & Wendy Piccus, *Sibling Connections: The Importance of Nurturing Sibling Bonds in the Foster Care System,* 27 *Child. & Youth Services Rev.* 845, 851–52 (2005).

Case law and the literature make clear that we cannot underestimate the value of nurturing and sustaining sibling relationships. The Child Placement Bill of Rights Act, *N.J.S.A.* 9:6B–1 to –6, and the internal DYFS Field Operations Casework Policy and Procedures Manual encourage both placement of siblings in the same home and sibling visitation for those placed in separate homes. The Child Placement Bill of Rights Act provides, in relevant part:

A child placed outside his home shall have the following rights, consistent with the health, safety and physical and psychological welfare of the child and as appropriate to the individual circumstances of the child's physical or mental development:

. . . .

d. To the best efforts of the applicable department to place the child in the same setting with the child's sibling if the sibling is also being placed outside his home;

. . . .

f. To visit with the child's sibling on a regular basis and to otherwise maintain contact with the child's sibling if the child was separated from his sibling upon placement outside his home, including the provision or arrangement of transportation as necessary[.]

[*N.J.S.A.* 9:6B–4.]

Additionally, the internal DYFS manual provides that "all efforts [be] made to place siblings in the same resource (including [foster], pre-adoptive or adoptive) home of the sibling, if appropriate." *II Field Operations Casework Policy and Procedures Manual* § 1502 (Dec. 30, 2004). The DYFS policy further states that "[s]ibling visitation must be included in the plan" developed "for every child in out-of-home placement." Id. § 1107.1 (Dec. 27, 2004).

*N.J.S.A.* 9:2–7.1 provides the framework for grandparent and sibling visitation when visitation is proven to be "in the best interests of the child." *N.J.S.A.* 9:2–7.1(a). Significantly, however, this Court has held that a natural grandparent does not have a right of contact with grandchildren who have been adopted by a non-relative under the Visitation Statute. *See W.P. & M.P., supra,* 163 *N.J.* at 160, 168, 748 *A.*2d 515. We declared in *W.P. & M.P.* that the New Jersey Adoption Act, *N.J.S.A.* 9:3–37 to –56, trumps the rights of grandparents, as defined in *N.J.S.A.* 9:2–7.1, reasoning that "the complete termination of the biological parents' rights" has "the logical effect of terminating a biological grandparent's right to visitation." *W.P. & M.P., supra,* 163 *N.J.* at 168, 748 *A.*2d 515. We have never directly addressed whether the same analysis and outcome would apply to a sibling. In other words, we have not had occasion to consider whether the rights provided to siblings under the Child Placement Bill of Rights Act and the Visitation Statute are still viable after parental rights have been

terminated and brothers and sisters have been adopted by separate families.

Nor have we addressed whether a child has a constitutional right to visit with a brother or sister who has been adopted by another family. Although we are not aware of any state court that has recognized a sibling right of association under its state constitution or under the Federal Constitution, some commentators assert that such a right does exist. *See* William Wesley Patten & Dr. Sara Latz, *Severing Hansel from Gretel: An Analysis of Siblings' Association Rights*, 48 *U. Miami L.Rev.* 745, 778 (1994) ("[T]he historical and contemporary evidence supports a clear finding that sibling's association has been a relationship historically endemic to the American definition of family. Siblings, just like parents and children, should clearly be held to possess an inherent, fundamental liberty interest in continued contact and association."); Angela Ferraris, Comment, *Sibling Visitation as a Fundamental Right in Herbst v. Swan*, 39 *New Eng. L.Rev.* 715, 734–35 (2005) (arguing that siblings' right to maintain contact with each other is protected by right to privacy); Barbara Jones, Note, *Do Siblings Possess Constitutional Rights?*, 78 *Cornell L.Rev.* 1187, 1189, 1196–98 (1993) (suggesting that sibling's right to contact with adopted brother or sister is encompassed within fundamental liberty right to intimate association).

### B.

The issues raised in this case are of profound importance and touch on far-reaching public policy concerns regarding sibling rights and the intended scope of the Child Placement Bill of Rights Act, *N.J.S.A.* 9:6B–1 to –6, the Visitation Statute, *N.J.S.A.* 9:2–7.1, and the Adoption Act, *N.J.S.A.* 9:3–37 to –56. Here, however, without the intervention of the courts, we have two families that, in the best interests of their children, have cooperated to allow sibling visitation. Because A.M.S. continues to have contact with her adopted siblings, we do not have in the traditional sense a controversy before us.

We are reluctant to address social issues of such paramount importance in a factual setting that raises no legitimate dispute. *See, e.g., Grand Union Co. v. Sills,* 43 *N.J.* 390, 410, 204 *A.*2d 853 (1964) (noting that there are "wholesome policy considerations which confine courts to actual controversies and dissuade them from rendering abstract or advisory opinions" (citing *Proprietary Ass'n v. Bd. of Pharmacy,* 16 *N.J.* 62, 72, 106 *A.*2d 272 (1954))). The record before the Family Court, moreover, contained no expert testimony comparing the importance of existing or anticipated sibling bonds to the sanctity of the adoptive family.

We also are mindful that "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation." *Randolph Town Ctr., L.P. v. County of Morris,* 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006) (per curiam) (citing *In re N.J. Am. Water Co.,* 169 *N.J.* 181, 197, 777 *A.*2d 46 (2001); *O'Keefe v. Passaic Valley Water Comm'n,* 132 *N.J.* 234, 240, 624 *A.*2d 578 (1993); *Donadio v. Cunningham,* 58 *N.J.* 309, 325–26, 277 *A.*2d 375 (1971)). A.M.S. has contact with her siblings and therefore we have no reason to consider the associational rights argument advanced by the Child Advocate. If the issues were squarely before us we would be obligated to address them, but ordinarily we should not decide issues prematurely presented.

The competing public policy concerns presented by the parties and amicus curiae would benefit from legislative review. In light of the goals of the Child Placement Bill of Rights Act, the Visitation Statute, and the Adoption Act, the Legislature may wish to weigh the importance of maintaining sibling relationships in the post-adoption context against the need for protecting parental autonomy and the harmony of the new family unit, and ensuring the success of our adoption system.

The state legislatures that have addressed the issue of sibling visitation after adoption have taken a variety of approaches. Some states allow a court to order sibling visitation if it is in the best interests of the children regardless of consent by adoptive

parents.[1]  Others entirely prohibit siblings from seeking post-adoption visitation.[2]  Some authorize a court to enforce a sibling visitation consent agreement entered into by adoptive parents.[3]

---

[1] *See, e.g., Ark.Code Ann.* § 9–9–215(c) (providing sibling visitation, if in best interests of siblings, for children who were in state custody before adoption and whose sibling was not adopted by same family); *Fla. Stat.* § 63.0427(1) (affording right to child, whose parents' rights have been terminated and "who is the subject of a petition for adoption," to have "court consider the appropriateness of postadoption communication or contact . . . with his or her siblings"); *Mass. Gen. Laws* ch. 119, § 26(5) (allowing court, if in best interests of child, to "ensure that children placed in foster care who are separated from siblings . . . have access to, and visitation rights with, such siblings" in pre-adoption and post-adoption context); *Nev.Rev.Stat.* § 125C.050 (granting siblings "reasonable right to visit"); *Nev.Rev.Stat.* § 127.171 (allowing court to grant child "reasonable right to visit" siblings as condition of adoption).

[2] 750 *Ill. Comp. Stat.* 5/607(a–5)(2) (prohibiting "sibling of a parent whose parental rights have been terminated through an adoption proceeding" from petitioning for "visitation rights"); *Va.Code Ann.* § 63.2–1215 (providing that blood relatives "shall, by final order of adoption, be divested of all legal rights and obligations in respect to the child including the right to petition any court for visitation with the child").

[3] *See, e.g., Cal. Fam.Code* § 8616.5(b)(1) (allowing "adopting parent or parents, the birth relatives, including the birth parent or parents, and the child [to] voluntarily enter [ ] into a written agreement to permit continuing contact between the birth relatives . . . and the child if the agreement is found by the court to have been entered into voluntarily and to be in the best interests of the child at the time the adoption petition is granted"); *Cal. Welf. & Inst.Code* § 366.29(c) (providing for enforcement of post-adoption sibling contact agreements if "[t]he party seeking the enforcement participated, in good faith, in mediation or other appropriate alternative dispute resolution proceedings regarding the conflict, prior to the filing of the enforcement action" and "[t]he enforcement is in the best interest of the child"); *Ind.Code* § 31–19–16.5–1 (granting court discretion to order post-adoption sibling visitation if in best interests of child and adoptive parents give consent); *La. Child. Code Ann.* art. 1269.1 to 1269.7 (allowing continuing contact agreements for sibling visitation); *Md.Code Ann., Fam. Law* § 5–308(a), (f) (permitting enforcement of agreement for post-adoption relative visitation); *Minn.Stat.* § 259.58 ("Adoptive parents and a birth relative or foster parents may enter an agreement regarding communication with or contact between an adopted minor, adoptive parents, and a birth relative or foster parents. . . ."); *N.M. Stat.* § 32A–5–35(A) (allowing adoptive parents to agree to allow contact between adoptee and relatives); *N.Y. Soc. Serv. Law* § 383–c(2)(b) (permitting adoptive parents to enter into agreement for

Yet others only permit non-binding agreements for post-adoption sibling visitation.[4]

Thus, the Legislature may have an interest in addressing the issues discussed here. We express no opinion on the merits of the issues raised by the parties and amicus curiae.

## II.

Based on the lack of a genuine controversy and on the limited record presented in this case, we vacate our order of certification as improvidently granted.

---

sibling visitation); *Okla. Stat.* tit. 10, § 7003–5.6f(A) ("If a child has resided with a birth relative before being adopted, the adoptive parents and that birth relative may enter into an agreement pursuant to the provisions of this section regarding communication with, visitation of or contact between the child, adoptive parents and the birth relative."); *Or.Rev.Stat.* § 109.305(2) (permitting written agreement, approved by court, regarding continuing contact between birth relatives and child).

4 *See, e.g., Alaska Stat.* § 25.23.130(c) (permitting visitation after adoption between adoptee and "that person's natural parents or other relatives"); *Colo. Rev.Stat.* § 19–5–210(7) ("In cases involving the adoption of a child who is part of a sibling group, but who is not being adopted with his or her siblings, in addition to issuing a final decree of adoption, if the adoptive parents are willing, the court may encourage reasonable visitation among the siblings when visitation is in the best interests of the child or the children."); *Ohio Rev.Code Ann.* § 3107.62, 3107.63, 3107.65 (authorizing non-binding open adoption agreements); *S.C.Code Ann.* § 20–7–1770(D) ("The validity of the final decree of adoption is not affected by an agreement entered into before the adoption between adoptive parents and biological parents concerning visitation, exchange of information, or other interaction between the child and any other person."); *Tenn.Code Ann.* § 36–1–121(f) (allowing unenforceable agreements in which "the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child"); *Vt. Stat. Ann.* tit. 15A, § 3–706(e) ("The validity of a decree of adoption issued under this title may not be challenged for failure to comply with an agreement for visitation or communication with an adoptee.").

*For vacation*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.