987 A.2d 628 (2010)
411 N.J. Super. 508
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff-Respondent,
v.
J.C., Defendant-Appellant.
New Jersey Division of Youth and Family Services, Plaintiff-Respondent,
v.
T.S.L., Defendant-Appellant.
In the Matter of the Guardianship of J.D.L.C., a minor.
A-1683-09T4, A-1684-09T4
Superior Court of New Jersey, Appellate Division.
Submitted January 7, 2010.
Decided February 11, 2010.
*629 Yvonne Smith Segars, Office of Parental Representation, for appellants J.C. and T.S.L. (Richard Foster, Assistant Deputy Public Defender, on the motion).
Anne Milgram, Attorney General, for respondent New Jersey Division of Youth and Family Services (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Lisa B. Landsman, Deputy Attorney General, on the brief).
Before Judges AXELRAD, FISHER and SAPP-PETERSON.
The opinion of the court was delivered by
FISHER, J.A.D.
Defendants J.C. and T.S.L. filed separate motions on December 1, 2009, seeking leave to file notices of appeal in *630 order to obtain our review of a judgment terminating their parental rights to a minor child.[2] The judgment in question was entered on August 18, 2008, and the child was adopted on July 17, 2009nearly sixteen months and more than four months, respectivelybefore the filing of the motions at hand. Notwithstanding that we liberally grant such motions in guardianship appeals, see N.J. Div. of Youth & Family Servs. v. R.G., 354 N.J.Super. 202, 806 A.2d 408 (App.Div.2002), we conclude that defendants' extraordinary delay coupled with the child's adoption requires denial of defendants' motions.
In seeking leave to appeal out of time, appellate counsel asserts thatafter defendants timely expressed to trial counsel their desire to appealthe case was
properly transmitted to OPR[[3]] Trenton in September of 2008, and that OPR Trenton had on September 29, 2008 faxed the documents necessary for the filing of the Notice of Appeal to the central appeals section of the Office of the Public Defender in Newark, New Jersey (OPD Central), again in accordance with the standard OPR procedure. That documentation had included written confirmation from T.S.L. that she wished to appeal.
However, according to the moving certification, "OPR Central reported on November 30, 2009 that they had no record of ever having received the documents necessary for the filing of an appeal on behalf of T.S.L., and therefore no Notice of Appeal had been filed." In short, according to defendants' appellate counsel, OPR received a timely request to appeal from their client but somehow failed to follow through.
OPR's failure came to light when, according to appellate counsel, T.S.L. asked her trial attorney in May 2009 about the status of the appeal. Her trial attorney then asked OPR Trenton for an update and "received an assurance from OPR Trenton that they would investigate the matter." Another request by T.S.L. to her trial attorney in late November 2009, which was again relayed, finally prompted the present motions for leave to appeal out of time.
Like the circumstances in R.G., supra, 354 N.J.Super. at 210, 806 A.2d 408, the record demonstrates that defendants followed OPR's procedure for pursuing an appeal and placed their trust in OPR that their rights would be protected. And, like R.G., defendants cannot be personally faulted for failing to timely file their appeals. In R.G., we granted relief, but the motions at hand must be denied.
This court has considered applications for leave to appeal out of time in such matters with great liberality, utilizing the standard and framework that has developed and was described in Judge Fall's opinion in R.G.[4] This case, however, differs. In R.G., the interval between the trial court judgment and the application for leave to file an appeal out of time was not quite one year; here, the delay was nearly sixteen months. More importantly, during that interval in R.G., a timely appeal was filed by the other parent and *631 adjudicated.[5]Id. at 205, 806 A.2d 408. This apparently had the effect in R.G. of preventing an adoption; the child here was adopted before the motions at hand were filed. With the adoption of the child by the foster parentswith whom he has resided since he was four months old (the child is now nearly four years old)if not moot, our ability to render effective relief in an appeal in this case is dubious at best.
It has been the Division's policy not to authorize adoption proceedings during the pendency of a guardianship appeal. However, in the vacuum existing between entry of the trial court judgment and the filing of a notice of appeal, OPR's clients remain at grave risk that their appeals may be rendered moot through inaction. Despite the existence of an office dedicated to representing indigent defendants in such matters, and despite the relatively small amount of energy required to prepare and file a notice of appeal, it is startling how often OPR asks this court to grant leave to file a notice of appeal out of time due to mistakes or OPR's inability to move more rapidly or efficiently.[6] In this case, defendants timely requested that OPR file appeals on their behalf and yet OPR failed to act in a timely fashion and permitted an extraordinary amount of time to elapse following entry of the trial court judgment.
We, thus, deny these motions. We find OPR's delay in seeking leave to file a notice of appeal to be unreasonable even when judged by our expansive approach in guardianship appeals. Considering the overarching goal of permanency for children caught up in such litigation, see, e.g., N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 309, 929 A.2d 1034 (2007); R.G., supra, 354 N.J.Super. at 209, 806 A.2d 408, it would simply be unconscionable for this court to permit an appeal at such a late date.
The egregiousness of OPR's delay is demonstrated by the fact that the child has been adopted. Entry of a judgment of adoption triggers the strong public policy of this State to "promote the creation of a new family unit without fear of interference from the natural parents." In re Adoption of Child by W.P., 163 N.J. 158, 169, 748 A.2d 515 (2000). The effect of adoption on the rights flowing from the child's former relationship with his or her natural parents is so extensive as to preclude the enforcement of indirect natural rights. For example, in W.P., the Court held that a nonrelative adoption precludes the statutory rights of the child's natural grandparents to visitation. Ibid.[7] The policy that adoption creates a new family unit without fear of interference from the child's natural parents would be disserved if we were to permit the filing of defendants' nascent guardianship appeals at this late date. Although it may not be entirely *632 clear whether an intervening judgment of adoption moots a guardianship appeal,[8] it certainly is a factor that weighs heavily in favor of rejecting an appeal out of time.
To summarize, in these circumstances, we decline to grant relief. The completed adoption and defendants' extraordinary delay in seeking relief compel our determination to withhold leave to appeal out of time.
Motions denied.
NOTES
[2] The child in question, J.D.L.C., was born on April 4, 2006.
[3] Office of Parental Representation.
[4] We are mindful that Rule 2:4-4(a) permits only an extension of an additional thirty days beyond the forty-five-day time bar for filing an appeal contained in Rule 2:4-1(a), and that these defendants seek leave to file an appeal far beyond those limits. However, we may further relax the time to file a guardianship appeal because of the significant constitutional rights involved. R.G., supra, 354 N.J.Super. at 207-08, 806 A.2d 408.
[5] Critical to the exercise of our authority pursuant to Rule 2:4-4(a) in R.G. was the fact that the other parent had filed a timely appeal and, in fact, that other appeal had been adjudicated by the time the movant sought leave to file an appeal out of time. 354 N.J.Super. at 205, 806 A.2d 408. In that circumstance, we recognized there would be little interference with the goal of permanency because the trial transcript was available from the earlier appeal and the other parent's tardy appeal could be rapidly adjudicated. Id. at 210, 806 A.2d 408.
[6] It has been estimated that motions are filed in approximately one-fifth of the appeals commenced by OPR in guardianship matters.
[7] But cf., N.J. Div. of Youth & Family Servs. v. S.S., 187 N.J. 556, 562-63, 902 A.2d 215 (2006) (describing the importance of sibling visitation despite adoption, although ultimately finding certification of the issue was improvidently granted).
[8] The Supreme Court has observed that in determining whether it is just and equitable to grant relief from a judgment pursuant to Rule 4:50, the passage of time has "greater significance" in guardianship matters than "in practically any other context." In re Guardianship of J.N.H., 172 N.J. 440, 475, 799 A.2d 518 (2002). But the Court did not necessarily rule out the availability of relief despite an intervening adoption; instead, the Court held only thatin addition to the detrimental impact caused by the delay in filing such a motion"a completed adoption would constitute an additional heavy weight against Rule 4:50 relief." Ibid. In short, although hardly expressing a favorable view of the likely success of such a motion, J.N.H. does not preclude the possibility that such a motion might be granted even after adoption has occurred.