RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2651-14T4
 A-5513-14T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

 v.

K.D.,

 Defendant-Appellant.
___________________________________

IN THE MATTER OF THE GUARDIANSHIP OF
S.D.,

 Minor.

_______________________________________________

 Argued April 25, 2017 – Decided June 1, 2017

 Before Judges Fisher, Vernoia and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Hudson
 County, Docket No. FG-09-135-11 and Middlesex
 County, Docket No. FA-12-67-12.

 Jennifer M. Kurtz, Designated Counsel, argued
 the cause for appellant (Joseph E. Krakora,
 Public Defender, attorney; Ms. Kurtz, on the
 brief).
 Julie B. Colonna, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney; Andrea
 M. Silkowitz, Assistant Attorney General, of
 counsel; Ms. Colonna, on the brief).

 Danielle Ruiz, Designated Counsel, argued the
 cause for minor (Joseph E. Krakora, Public
 Defender, Law Guardian, attorney; Ms. Ruiz,
 on the brief).

PER CURIAM

 The procedural circumstances in these consolidated appeals

appear to present unusual legal issues. Notwithstanding, our focus

remains on the best interests of a ten-year old child whose future

this case impacts.

 I

 S.D., the child in question, was born on the fourth of July

in 2006.1 He was removed from the care and custody of his mother

– defendant K.D. – in 2009, because of lapses in defendant's

parenting caused by her alcoholism.2 The child was placed in the

care of his maternal grandmother, A.D. (Anna, a fictitious name).

1
 The child was diagnosed with "Autism Spectrum Disorder with
combined repetitive and expressive language disorder,
developmental fine motor coordination disorder and attention
deficit hyperactivity disorder."
2
 In September 2009, police reported finding the child, then three
years of age unaccompanied at a busy intersection. Following its
investigation, the Division of Protection and Permanency provided
a "24 hour homemaker" and, after reviewing the homemaker's

 2 A-2651-14T4
 The Division commenced a guardianship action in Hudson County

in October 2010, asserting there was no viable alternative to the

termination of parental rights. The child's father – T.D. – entered

into a voluntary surrender of his parental rights in favor of

Anna. And, in 2011, defendant also executed a voluntary surrender

of her parental rights in favor of Anna, as well as defendant's

twenty-two year old daughter, C.D. (Carolyn, a fictitious name).3

At the April 27, 2011 hearing, there was some initial confusion

about defendant's undertaking.4 But, defendant eventually

subsequent reports, determined the child was "unsafe," conducted
a Dodd removal, and placed the child with his maternal grandmother.
3
 The record suggests that at some point after defendant executed
it, Carolyn's name was crossed out of the voluntary surrender
form. There is no indication – other than what might be suggested
by the hearing concerning this surrender – that defendant consented
to that alteration of the document she had signed.
4
 After defendant's attorney advised the judge that defendant was
"prepared to enter an identified surrender to her mother and adult
daughter," the following took place:

 [DEPUTY ATTORNEY GENERAL]: No, it's just the
 mother [i.e., Anna].

 [LAW GUARDIAN]: It's just the mother [Anna]
 with the daughter [Carolyn] being the back up.

 [DEFENSE COUNSEL]: It's just the mother?

 THE COURT: Just her mother then, right?

 [DEPUTY ATTORNEY GENERAL]: Yes.

 3 A-2651-14T4
testified her surrender was only in favor of Anna, and, at the

conclusion of the hearing, the judge stated he was "fully confident

and convinced" that the surrender was "freely, voluntarily and

knowingly" made. That same day, a judgment was entered terminating

defendant's parental rights. That judgment, which went unappealed,

permitted Anna to adopt the child, and a judgment of adoption was

entered in Middlesex County on March 29, 2012.

 On May 12, 2012, six weeks after adopting the child, Anna

died.

 Carolyn, who lived in Anna's home, thereafter cared for the

child. A few months later, Carolyn advised the Division she was

unable to provide permanent care for the child and requested that

the Division find him a home, although Carolyn also expressed a

willingness to care for the child until that occurred.

 In October 2012, the Division filed a complaint in Middlesex

County seeking guardianship of the child. Defendant was not named

as a party even though she was the child's natural parent, even

though the termination of her parental rights was based on a

surrender to Anna, and even though she had become, by way of the

 THE COURT: That's who the father surrendered
 to, the maternal grandmother, right?

 [DEFENSE COUNSEL]: [Carolyn is] still going
 to be the back up.

 4 A-2651-14T4
judgment of adoption, the child's sibling. In defendant's absence,

and in the absence of any other person or entity that might have

had an interest in the circumstances, other than the law guardian,5

on October 1, 2012, the trial court entered a judgment terminating

Anna's parental rights.6 The judge referenced no authority that

would allow for the termination of the parental rights of a

deceased person; we doubt any exists. Other than perhaps easing

the way for the Division to control the situation, we see no

purpose in those proceedings or the October 1, 2012 order.7

 The Division thereafter removed the child from Anna's home,

where defendant apparently also resided. He was placed in two

treatment homes, but only temporarily, and was finally placed in

his current treatment home in May 2013.

 During this time, defendant sought to eliminate her problems

with alcohol. Evidence heard at later proceedings demonstrated she

took her last drink in September 2013. Defendant successfully

completed inpatient treatment in March 2014 and continued with an

5
 No personal representative of Anna's estate was named or noticed
in these proceedings.
6
 If a hearing was conducted on that occasion, the parties have
not provided this court with a transcript.
7
 Indeed, the only possible impact of this order was its potential
to deprive the child of any right to inherit from Anna.

 5 A-2651-14T4
intensive outpatient program, consistently testing negative for

all substances.

 In light of these considerable efforts, defendant moved to

restore her relationship with the child in June 2014. Her pro se

motion, filed in Hudson County where the original guardianship

action was commenced, sought to vacate her identified surrender

of the child and to set aside the Middlesex County judgment that

memorialized Anna's adoption of the child.

 In January 2015, the Hudson County judge conducted a hearing

to consider the factual basis for defendant's motion. Defendant

testified she believed her surrender was not only to her mother,

Anna, but also to her daughter, Carolyn. She also testified she

did not "totally understand" what she was doing when she

surrendered her parental rights. She claimed that she drank heavily

the night before the hearing and that she was "not fully clear

headed" and was "very confused" at the April 27, 2011 hearing.

Defendant also asserted that she was misled when she was convinced

by the Division to change her plan from kinship legal guardianship

to an identified surrender. And she testified on cross-examination

that she did not remember attending pre-surrender counseling or

even testifying at the April 27, 2011 hearing that she did attend

counseling.

 6 A-2651-14T4
 The motion judge did not find defendant's testimony to be

credible and denied her motion to vacate by order entered on

January 9, 2015. The judge also directed that the Division's

request to vacate Anna's adoption of the child be heard in

Middlesex County.

 Defendant filed a notice of appeal, seeking our review of the

January 9, 2015 order. On February 27, 2015, while that appeal was

pending, a Middlesex County judge denied defendant's application

to vacate the judgment of adoption, and on April 13, 2015, the

judge also denied defendant's motion for reconsideration.8

 Before the motion for reconsideration in the adoption matter

was denied, defendant moved in this court for supplementation of

the record on her first appeal with information concerning her

successful completion of inpatient treatment and her regular

attendance in outpatient treatment. We denied the motion to

supplement without prejudice and, instead, remanded the matter to

the trial court, while retaining jurisdiction, to provide

defendant with the opportunity to seek relief from the judgment

which memorialized her surrender based on her claim of changed

circumstances.

8
 Defendant filed a separate notice of appeal, seeking our review
of these February 27 and April 13, 2015 orders.

 7 A-2651-14T4
 In conformity with our order, defendant moved in Hudson County

for relief pursuant to Rule 4:50. At an evidentiary hearing,

defendant presented her own testimony as well as that of a clinical

psychologist, and a drug treatment counselor; these witnesses

testified to defendant's sobriety and her ability to care for the

child. Defendant also called a Division caseworker, who testified

the Division's plan for the child was select home adoption – a

plan that had not borne fruit. The Division responded with the

testimony of a psychologist and the executive director of a drug

treatment center. The Division also called its adoption

supervisor, who testified the child's current caretaker was

unwilling to adopt but willing to continue caring for him until

an adoptive home could be located.

 The motion judge – employing the two-prong test from In re

Guardianship of J.N.H., 172 N.J. 440, 474-75 (2002) — found

defendant's circumstances had indeed changed but that she had not

shown it was in the child's best interests to change his placement

or return him to defendant's care and custody.

 Defendant filed an amended notice of appeal, seeking review

of the August 18, 2015 order, which denied her Rule 4:50 motion.

The pending appeals, as amended – regarding the Hudson County

guardianship action and the Middlesex County adoption action –

were consolidated.

 8 A-2651-14T4
 In the meantime, yet another action was commenced in Middlesex

County and remains pending. In this so-called "FC" matter,9 the

trial court has continued to monitor the situation, and has allowed

defendant to intervene for purposes of seeking visitation without

foreclosing intervention in other areas. An October 12, 2016 order,

which was included in the record on appeal, states that the

Division issued an October 11, 2016 letter that ruled defendant

out as a resource placement for the child.

 The Division advised a few days prior to oral argument in

this court, pursuant to Rule 2:6-11(f), that the resource parent

has now committed to adopting the child.

 II

 In appealing the January 9, 2015, and August 18, 2015 orders

in the guardianship matter, and the February 27, 2015, and April

13, 2015 orders in the adoption matter, defendant presents the

following arguments for our consideration:

 I. THE MOTHER'S MOTION TO VACATE THE
 IDENTIFIED SURRENDER AND ADOPTION SHOULD BE
 GRANTED BECAUSE SHE HAS DEMONSTRATED CHANGED
 CIRCUMSTANCES, AND VACATING THE JUDGMENTS IS
 IN THE CHILD'S "BEST INTEREST."

9
 Docket numbers in family court matters contain a two-letter
prefix all of which start with the letter "F." For example, the
prefixes to the docket numbers of the guardianship and adoption
actions were "FG" and "FA," respectively. "FC" is used to designate
a matter that concerns a child's placement.

 9 A-2651-14T4
 II. DUE TO A NUMBER OF PROCEDURAL FLAWS,
 INCLUDING CHANGING THE TERMS OF THE SURRENDER
 AFTER THE MOTHER EXECUTED IT, THE SURRENDER
 WAS NOT MADE KNOWINGLY AND VOLUNTARILY AND,
 THUS, THE MOTHER'S MOTION TO VACATE THE
 SURRENDER SHOULD BE GRANTED.

 III. THE ADOPTION SHOULD BE VACATED AND THE
 MOTHER'S PARENTAL RIGHTS SHOULD BE REINSTATED.

Having closely examined the record in light of these issues, we

reject defendant's challenges to the orders denying her post-

judgment attempts to set aside the voluntary surrender of her

parental rights in favor of Anna. In both instances, the judge

conducted an evidentiary hearing, made factual findings that

require our deference, and utilized sound discretion in

determining that the April 27, 2011 judgment should not be altered,

modified or vacated. We, thus, affirm the orders entered in the

Hudson County guardianship action that are under review.10

10
 None of the parties requested oral argument in this court. We
notified the parties, however, that the court required oral
argument and asked counsel to be prepared to argue whether any
part of defendant's appeals would be moot, particularly whether –
if we were to leave undisturbed the judgment of adoption –
defendant's appeal of the orders denying relief from the
guardianship action would be rendered moot. It is arguable that
an adoption moots any subsequent attack on a judgment terminating
the natural parent's rights to the adopted child – i.e., how can
the parental rights of a birth parent be restored if the child has
been adopted and the judgment of adoption is inviolate? See N.J.
Div. of Youth & Family Servs. v. J.C., 411 N.J. Super. 508, 512
(App. Div. 2010) (recognizing that, "if not moot," an appellate
court's "ability to render effective relief" in an out-of-time
appeal following a judgment of adoption "is dubious at best"). In

 10 A-2651-14T4
 In the first instance – the pre-appeal motion to vacate – the

judge determined that defendant failed to demonstrate she did not

knowingly or voluntarily surrender her rights. The judge heard and

considered the testimony and made findings that militated against

granting relief; those findings require our deference. See N.J.

Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008);

N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293

(2007).

 In the second instance – the post-appeal motion to vacate –

the judge heard a considerable amount of testimony from defendant,

other lay witnesses, and competing expert witnesses, from which

the judge determined that, although defendant had demonstrated

changed circumstances, she had not proved it was in the child's

best interests to set aside the judgment. These findings are also

entitled to deference on appeal, and we are satisfied the judge's

assessment of the evidence comported with the legal standard set

forth in J.N.H., supra, 172 N.J. at 474-75.

a similar setting, however, the Supreme Court chose not to find
moot a post-adoption appeal of an order denying Rule 4:50 relief
from the termination of parental rights, noting only that such a
circumstance "would constitute an additional heavy weight against
Rule 4:50 relief." J.N.H., supra, 172 N.J. at 475. In any event,
because we find no merit in defendant's arguments on appeal
regarding the denial of her motions to vacate, we need not
determine whether her appeal was rendered moot by the entry of a
judgment of adoption that could not be set aside in these
circumstances.

 11 A-2651-14T4
 We also conclude that the Middlesex judge properly denied the

motion to set aside the judgment of adoption. For the reasons just

expressed, we reject the premise upon which that motion was based:

that defendant's voluntary surrender was ineffectual to terminate

her parental rights or that it is inequitable to further enforce

the April 27, 2011 guardianship judgment. Moreover, the adopting

mother – Anna – had passed away by the time defendant applied for

relief, thereby rendering academic any challenge to the adoption

judgment.11

 This brings us to the October 1, 2012 order, which

posthumously terminated Anna's parental rights. Although

defendant's appeals in the guardianship and adoptions matters do

not implicate this order, which was entered in a separate matter

not before us for review, we cannot ignore the fact that this

order suffers from the same disabilities found in defendant's

motion to vacate the judgment of adoption. There is no evidence

that notice was given to Anna's personal representative or to

defendant, who, upon Anna's adoption of the child, had become in

the eyes of the law the child's sibling. And the Division's

application sought relief the court was not empowered to give: the

11
 Even if that were not so, the motion was procedurally deficient
because notice was not given to the personal representative of
Anna's estate.

 12 A-2651-14T4
termination of parental rights of a deceased parent. The issue

resolved by that court had been rendered purely academic; any

debate about Anna's parental rights ended with her death.

 III

 This leaves us with the question the Law Guardian rightfully

emphasized at oral argument: moving forward, what is best for this

child? Our response is that this presents a highly-sensitive fact

question that must be further considered in the trial court.

 As noted earlier, an "FC" action is pending in Middlesex

County. That court, we are told, permitted defendant's

intervention, albeit to a limited degree, but with the

acknowledgement that her involvement in the action could be

expanded as the matter progresses. As noted above, the record on

appeal reveals that the Division issued a letter that "ruled out"

defendant's consideration as a resource; an order entered in the

FC matter, however, also recognized that defendant had not, at

that time, been served with the letter. Whether, when, or to what

extent defendant may challenge that determination is not presently

clear.

 The Division, as we observed above, also advised this court

days before oral argument that the resource parent was now

committed to adopting the child. And, at oral argument, counsel

 13 A-2651-14T4
represented to this court that the judge presiding over the FC

matter is, in essence, awaiting our disposition of these appeals

before proceeding further in that matter.

 Having found no merit in defendant's challenge to the orders

under review, and having thereby fixed defendant's status vis-à-

vis the child subject to what future proceedings may generate, we

believe the best approach to this unusual and troubling matter is

to simply allow the FC matter to proceed. In other words, the FC

matter should proceed on the basis that defendant's parental rights

remain terminated, but also with the understanding that Anna's

parental rights were not terminated by order but, instead, by her

death,12 leaving defendant – in the law's eyes – as a family member

of the child. We trust, in this regard, that the FC judge will now

examine what is in the best interests of the child, including

consideration of defendant's availability as a resource as a member

of the child's family or otherwise. And we offer no view of the

propriety of the so-called "rule out" letter, which is neither

contained in the record on appeal nor before us for a review of

its merits.

12
 The adoption judge properly denied the motion to vacate the
judgment permitting Anna's adoption of the child. And, although
not directly before us, we conclude that the judge who entered the
October 1, 2012 order mistakenly posthumously terminated Anna's
parental rights.

 14 A-2651-14T4
 IV

 We, thus, affirm: the January 9, 2015, and August 18, 2015

orders, which denied defendant's motions to vacate the April 27,

2011 judgment; the February 27, 2015 order, which denied

defendant's motion to vacate the judgment of adoption; and the

April 13, 2015 order, which denied defendant's motion for

reconsideration of the February 27, 2015 order.

 Affirmed.

 15 A-2651-14T4