# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0038-20

C.A.B.,[1]

    Plaintiff-Appellant,

v.

C.A.O.,

    Defendant-Respondent.

_____

Submitted December 13, 2021 – Decided January 3, 2022

Before Judges Rose and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0384-16.

Law Offices of James M. Doyle, attorneys for appellant (James M. Doyle, of counsel and on the briefs; Jane M. Personette, on the briefs).

Dimin Fierro, LLC, attorneys for respondent (William N. Dimin, on the brief).

---

[1] We use initials to protect the privacy of the alleged victim, R. 1:38-3(d), and pseudonyms for ease of reference.

PER CURIAM

Plaintiff C.A.B. (Father or plaintiff) appeals from an August 20, 2020 Family Part order, denying his application for sibling visits among his three children at the home of his mother (Paternal Grandmother), while incarcerated pending trial for sexual abuse charges involving: his son, A.O.-B. (Andrew), born September 2015; his underage step-niece; and a former coworker. As she did before the trial court, Andrew's mother, defendant C.A.O. (Mother or defendant), opposes visitation with Andrew's half-sister, K.B. (Karen), born November 2012, and half-brother, R.Z.-B. (Ron), born April 2017, and urges us to affirm the court's order. Paternal Grandmother, Karen's mother, A.O. (Ann), and Ron's mother, J.Z. (Jane), did not participate in Father's motion before the trial court and are not parties to this appeal. Because Father failed to demonstrate sibling visitation was in Andrew's best interests, we affirm.

The parties were never married; Andrew is their only child. By all accounts, the parties' romantic relationship was brief and their parenting relationship was discordant. Within six months of Andrew's birth, Father filed a non-dissolution action for custody and parenting time. On March 9, 2016, the trial court granted the parties joint legal custody of Andrew, and designated Mother as the parent of primary residence and Father as the parent of alternate

A-0038-20

residence. Father was granted parenting time every other Saturday and Sunday without overnights.

Thereafter, the parties agreed to expand Father's parenting time. On December 19, 2017, another Family Part judge entered a consent order, affording Father parenting time with Andrew on alternate Friday evenings from 5:00 p.m. to 8:00 p.m., and overnights every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. Because Father's parenting time with Andrew overlapped with one or both of his other children, it was held at Paternal Grandmother's home, which was large enough to accommodate all three children simultaneously. Sibling visitation continued in that manner for the next two years but was not formalized by court order.

Father's parenting time with Andrew abruptly ended following plaintiff's February 14, 2020 arrest for sexually assaulting his step-niece. Unaware of Father's arrest and incarceration on the charges, Mother brought Andrew to Paternal Grandmother's home for plaintiff's scheduled parenting time. When Mother returned to pick up Andrew on Sunday, February 16, 2020, Father's girlfriend advised of plaintiff's arrest.

Soon thereafter, Mother applied for an order to show cause, seeking temporary sole legal and residential custody of Andrew, and suspension of

A-0038-20

Father's parenting time with their son.  On February 20, 2020, the judge assigned to the present matter granted Mother's application, thereby suspending Father's parenting time with Andrew, pending resolution of the criminal matter and completion of plaintiff's psychiatric evaluation.  The order permitted plaintiff, upon two days' notice to Mother, to "seek to dissolve these restraints."

On March 31, 2020, Father moved to vacate the February 20, 2020 order.  Father also cross-moved, on his own behalf, to compel Mother's compliance with the parties' previously agreed-upon parenting time schedule "to ensure continued sibling visits/relationships" while he remained detained pretrial.  According to Father's supporting certification, he and Ann had informally shared joint legal custody of Karen, and he enjoyed parenting time with Karen three weekends per month.  Similarly, Father asserted he and Jane had informally agreed to share joint legal custody of Ron, with Father's parenting time scheduled for every weekend.  Absent from Father's application, however, were supporting certifications of Ann and Jane as to their positions confirming those agreements or expressing their positions on continued sibling visitation between their respective child and Andrew.

Sometime in April 2020, Andrew told his maternal grandmother he was sexually assaulted by Father.  Thereafter, detectives assigned to the Bergen

A-0038-20

County Prosecutor's Office interviewed Andrew and on April 24, 2020, Father was charged with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1).[2] Pursuant to an investigation commenced by the Division of Child Protection and Permanency (DCPP), Andrew was referred for a psychosocial evaluation at Audrey Hepburn Children's House in Hackensack. DCPP thereafter substantiated Andrew's allegations of digital penetration by Father. In its August 7, 2020 correspondence, DCPP notified the judge of its findings and recommendations.[3]

At the conclusion of argument on August 20, 2020, the judge rendered an oral decision denying Father's application. Referencing DCPP's findings, the judge noted Andrew's psychosocial evaluation revealed the child "presented symptoms of post-traumatic stress disorder as a result of the sexual abuse." The evaluation recommended various modalities of therapy, including family sessions with Mother. However, "it was recommended that A[ndrew] not have

---

[2] On May 28, 2020, Father was charged with sexually assaulting a former co-worker in 2012.

[3] The judge released DCPP's correspondence to the parties under a protective order. The parties did not include the letter on appeal, but do not dispute its authenticity or the judge's synopsis of its contents.

A-0038-20

any contact with [Father] until the investigation [wa]s completed and [Father is] assessed for parenting capacities and risk" to avoid "negatively impact[ing]" Andrew's progress.

The judge also cited DCPP's assessment that Paternal Grandmother was not "an appropriate and safe supervisor at this time" because "she has stated that she does not believe the sexual abuse occurred." The judge noted DCPP's concerns that Paternal Grandmother's disbelief "would impact her interactions with A[ndrew]."

As to Andrew's best interests, the judge concluded:

> At this time, I see nothing before me that would . . . lead me to conclude that continued access to his two half-siblings would do A[ndrew] any harm. At this time, I believe that A[ndrew] needs to focus on his own issues and his own recovery, and his own therapy, and I would find that for him to have continued access to [Father]'s other family at this time would not be in A[ndrew]'s best interest.

This appeal followed.

On March 5, 2021, the judge granted Mother's ensuing motion to settle the record pursuant to Rule 2:5-5(a). The judge explained, in pertinent part:

> I had stated on the record that there was no evidence that the child's exposure to his half-siblings would do A[ndrew] any harm. I had noted [Mother]'s objection to A[ndrew]'s visitation with the other children. I also noted that A[ndrew] needed to focus on

6

his own issues, his own recovery[,] and his own therapy. A[ndrew] did not need to be exposed to possible pressure from [Father]'s family and the other children. Given the totality of the circumstances, I found that to grant visitation with [Father]'s other children would not be in A[ndrew]'s best interest. With the road lying ahead to A[ndrew]'s recovery, I was not about to risk it.

On appeal, Father contends the judge abused his discretion by summarily denying his application to continue sibling visitation at Paternal Grandmother's house, without holding a plenary hearing; relying on hearsay contained in DCPP's August 7, 2020 correspondence; and failing to apply the best interests standard under N.J.S.A. 9:2-7.1. Father also asserts the judge should have granted his discovery requests to, among other things: have Andrew independently evaluated by a psychologist of plaintiff's choice; depose defendant and her mother; restrain Mother "and any other persons coming into contact with Andrew" from discussing the sexual abuse allegations against Father; and prohibit Mother from making disparaging remarks about Father and his family members.

Our limited scope of review of a trial court's findings is well established. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). We accord deference to the family courts due to their "special jurisdiction and expertise" in the area of family law. Id. at 413. We will not disturb the court's factual findings and legal

7

conclusions "unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv.'s Ins. Co., 65 N.J. 474, 484 (1974)). Conversely, a trial judge's decision on a purely legal issue is subject to de novo review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007).

The Grandparent and Sibling Visitation Statute, N.J.S.A. 9:2-7.1 (GSVS), "confers on a child's grandparent or sibling standing to file an action for an order compelling visitation[,]" Major v. Maguire, 224 N.J. 1, 13 (2016), and "provides the framework for grandparent and sibling visitation when visitation is proven to be 'in the best interests of the child,'" N.J. Div. of Youth & Fam. Servs. v. S.S., 187 N.J. 556, 562 (2006) (quoting N.J.S.A. 9:2-7.1(a)). The applicant bears the burden of proving "by a preponderance of the evidence that the granting of visitation is in the best interests of the child." N.J.S.A. 9:2-7.1(a).

When an application is filed pursuant to the GSVS, courts must consider the following relevant factors:

> (1) The relationship between the child and the applicant;
>
> (2) The relationship between each of the child's parents or the person with whom the child is residing and the applicant;

(3) The time which has elapsed since the child last had contact with the applicant;

(4) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;

(5) If the parents are divorced or separated, the time[-] sharing arrangement which exists between the parents with regard to the child;

(6) The good faith of the applicant in filing the application;

(7) Any history of physical, emotional[,] or sexual abuse or neglect by the applicant; and

(8) Any other factor relevant to the best interests of the child.

[N.J.S.A. 9:2-7.1(b).]

Lastly, the GSVS provides: "With regard to any application made pursuant to this section, it shall be prima facie evidence that visitation is in the child's best interest if the applicant had, in the past, been a full-time caretaker for the child." N.J.S.A. 9:2-7.1(c).

In the context of a grandparent's application under the GSVS, our Supreme Court in Major reaffirmed its earlier holding in Moriarty v. Bradt, 177 N.J. 84 (2003), "that, in order to overcome the presumption of parental autonomy in the raising of children, grandparents who bring visitation actions under N.J.S.A.

9:2-7.1 must prove by a preponderance of the evidence that denial of visitation will harm the child." Major, 224 N.J. at 7. Similarly, the Court thereafter held an adult sister seeking visitation must demonstrate that her minor siblings "would suffer harm if denied visitation with her." In re D.C., 203 N.J. 545, 575 (2010). According to the Court: "The standard is a stringent one . . . that cannot likely be satisfied by siblings who have had no connection to each other or by those whose bonds are flaccid, or worse, toxic." Ibid.

"Absent a showing that the child will suffer harm if . . . visitation is denied, a trial court may not mandate visitation pursuant to the best-interests factors of N.J.S.A. 9:2-7.1." Major, 224 N.J. at 18; see also Slawinski v. Nicholas, 448 N.J. Super. 25, 34 (App. Div. 2015) ("Only after the grandparent vaults the proof-of-harm threshold will the court apply a best-interests analysis to resolve disputes over visitation details."). The harm to the child must be "a particular identifiable harm, specific to the child." Mizrahi v. Cannon, 375 N.J. Super. 221, 234 (App. Div. 2005).

As a preliminary matter, we note Mother did not challenge Father's standing to cross-move on his own behalf, for visitation among Andrew and

plaintiff's other two children under the GSVS, or visitation with Paternal Grandmother.[4] Nor does Mother contest Father's standing on appeal.

Clearly, however, Father did not have standing to seek visitation on behalf of Paternal Grandmother under the GSVS. Further, while we acknowledge a parent who has sole legal custody of a child may request sibling visitation on behalf of his child under the GSVS, we cannot ignore Father's certification that acknowledges he shares joint legal custody of Karen with Ann, and Ron with Jane. Because Father's application on behalf of Andrew's siblings was not filed on their behalf with the consent of their mothers, we are not satisfied Father had standing to file the present application under the GSVS. In sum, we are not aware of any reported decisions that extend standing under this statute to anyone other than a third-party "grandparent" or "sibling."

Nonetheless, because Father retained certain parental rights notwithstanding his loss of parenting time and joint legal custody, we have considered his contentions on the merits and conclude he failed to demonstrate

---

[4] In his merits brief, Father asserts his application before the trial court "was specifically and narrowly tailored to address the important issue of Andrew's visitation with his half-siblings," then notes "[a]s well as with his paternal relatives including [Paternal Grandmother] and [plaintiff's] sister."

that the suspension of the parties' informal sibling visitation arrangement constitutes reversible error.

When a court is confronted with a dispute regarding the best interests of a child, the court must consider "what will protect the safety, happiness, physical, mental and moral welfare of the child." Mastropole v. Mastropole, 181 N.J. Super. 130, 136 (App. Div. 1981) (internal quotation marks omitted) (quoting Beck v. Beck, 86 N.J. 480, 497 (1981)). Indeed, a Family Part judge has a parens patriae responsibility to consider the welfare of the child in resolving parenting time disputes. See Fawzy v. Fawzy, 199 N.J. 456, 474-75 (2009). Here, the record reflects the judge understood these responsibilities and found sibling visits were not in Andrew's best interests because the child "needed to focus on his own issues, his own recovery[,] and his own therapy" and "did not need to be exposed to possible pressure from [Father]'s family and the other children." We perceive no basis to disturb the judge's finding in this regard.

Although, Father's certification notes Karen's "struggle[s] with her sudden separation from [plaintiff] and [Andrew]," and that he has "no reason to doubt that A[ndrew] is similarly missing his sister and brother," Father did not provide the Family Part judge with competent proof as to why sibling visits would be in

A-0038-20

Andrew's best interests. Moreover, Father did not address whether sibling visits would negatively impact Andrew's recovery, or whether the child would face pressure from his siblings or their families. Even on appeal, Father merely speculates "it may well be harmful to [Andrew] to be suddenly ripped from his father, paternal relatives and siblings."

Because we conclude Father did not demonstrate there was a material change in circumstances that would justify a modification of the existing custody and parenting time orders or that the suspension of sibling time was contrary to Andrew's best interests, we further conclude a plenary hearing was unnecessary. See Hand v. Hand, 391 N.J. Super. 102, 105-06 (App. Div. 2007).

To be clear, in the present matter, the judge did not permanently terminate Andrew's visitation with his half-siblings. Concerned about Andrew's welfare and recovery process, the judge instead suspended an informal sibling visitation arrangement. Accordingly, Father is not precluded from seeking reinstatement of sibling visits in the future, subject to Andrew's successful completion of therapy.

For the first time on appeal, Father argues DCPP's August 7, 2020 correspondence constituted "a hearsay report" and "relied upon conclusions and recommendations of another hearsay report." Incongruently, he further asserts:

13

"For the sake of this argument, [p]laintiff neither challenges nor accepts the recommendations by DCPP as summarized by the court." Father also contends DCPP's recommendations "are entirely irrelevant to the relief sought [by his] application or on appeal."[5]

We disagree. DCPP's August 7, 2020 correspondence, particularly concerning the myriad of therapeutic services recommended for Andrew, underscored the judge's decision that sibling visitation was not in Andrew's best interests and, as such, was highly relevant. Additionally, we are convinced the judge properly considered DCPP's recommendations in deciding Father's cross-motion. Notably, Father posed no hearsay objection to those recommendations during oral argument before the Family Part judge.

To the extent not addressed, Father's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following comments.

In denying plaintiff's cross-motion, the judge did not expressly address plaintiff's discovery requests. On appeal, both parties acknowledge those

---

[5] Father's merits brief was filed prior to the judge's March 5, 2021 amplification statement, which was annexed to Mother's responding brief. However, Father's reply brief does not address the judge's findings or reliance on DCPP's August 7, 2020 correspondence.

requests were rendered moot by the judge's denial of sibling visitation. Moreover, as Father candidly acknowledges in his merits brief, "[t]he discovery sought by [p]laintiff clearly overlaps with the criminal matter." We therefore discern no abuse of discretion in the judge's failure to order discovery in this matter. See Major, 224 N.J. at 24 (recognizing "Family Part judges have broad discretion to permit, deny, or limit discovery in accordance with the circumstances of the individual case").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0038-20